# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| TRENNA MARIE WRIGHT, ) | |
|     Plaintiff ) | |
| v. ) | Civil Action No. 2:14cv00019 |
| ) | **MEMORANDUM OPINION** |
| CAROLYN W. COLVIN, ) | |
|  Acting Commissioner of ) | |
|  Social Security, ) | By: PAMELA MEADE SARGENT |
|     Defendant ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Trenna Marie Wright, ("Wright"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying her claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423 and 1381 *et seq.* (West 2011 & West 2012). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642

(4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Wright protectively filed her applications for DIB and SSI on September 21 and 27, 2010, respectively, alleging disability as of September 14, 2010, due to major depression, anxiety, bipolar disorder, stress, insomnia, fatigue, panic attacks, post-traumatic stress disorder, neck and low back pain, migraines and bladder problems. (Record, ("R."), at 12, 186-87, 202, 207, 255.) The claims were denied initially and upon reconsideration. (R. at 92-94, 97-99, 107-09, 111-16, 118-20, 140.) Wright then requested a hearing before an administrative law judge, ("ALJ"). (R. at 121.) A hearing was held on December 17, 2012, at which Wright was represented by counsel. (R. at 28-47.)

By decision dated December 27, 2012, the ALJ denied Wright's claims. (R. at 12-22.) The ALJ found that Wright met the disability insured status requirements of the Act for DIB purposes through December 31, 2011. (R. at 14.) The ALJ found that Wright had not engaged in substantial gainful activity since September 14, 2010, the alleged onset date. (R. at 14.) The ALJ found that the medical evidence established that Wright had severe impairments, namely anxiety, depression, obesity and a history of knee tendonitis, but he found that Wright did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 14.) The ALJ found that Wright had the residual functional capacity to

perform simple, routine, repetitive, unskilled medium work[1] that required no more than occasional decision making, use of judgment, changes in the work setting or interaction with others and that did not require her to climb ladders, ropes or scaffolds, to be around concentrated exposure to hazards or to perform production rate or pace work. (R. at 18.) The ALJ found that Wright had no past relevant work. (R. at 21.) Based on Wright's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of jobs existed in the national economy that Wright could perform, including jobs as a night cleaner, a cafeteria attendant and a library shelving clerk. (R. at 21-22.) Thus, the ALJ concluded that Wright was not under a disability as defined by the Act and was not eligible for DIB or SSI benefits. (R. at 22.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2014).

After the ALJ issued his decision, Wright pursued her administrative appeals, (R. at 7), but the Appeals Council denied her request for review. (R. at 1-5.) Wright then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2014). This case is before this court on Wright's motion for summary judgment filed October 27, 2014, and the Commissioner's motion for summary judgment filed November 13, 2014.

---

[1] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, she also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2014).

## II. Facts

Wright was born in 1971, (R. at 186), which classifies her as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). Wright obtained her general equivalency development, ("GED"), diploma, and she has vocational training as a certified nurse's assistant. (R. at 33, 208.) She has past work experience as a certified nurse's assistant. (R. at 34, 209, 213.) Wright testified at her hearing that she was not taking any medication, other than ibuprofen. (R. at 35.) She stated that she could not afford to buy the medications prescribed for her. (R. at 37.) Wright stated that she experienced a panic attack once every two weeks and that the panic attacks were brought on by being in "a big crowd" or by being in the presence of "a lot of commotion." (R. at 40.)

Ashley Wells, a vocational expert, also was present and testified at Wright's hearing. (R. at 45-46.) Wells was asked to consider a hypothetical individual who could perform simple, routine, repetitive medium work that required no more than occasional decision making, changes in the work setting, use of judgment and interaction with the public, co-workers or supervisors and that did not require her to climb ladders, ropes or scaffolds or to be around concentrated exposure to hazards, such as machinery and unprotected heights. (R. at 45.) Wells stated a significant number of light[2] jobs existed that Wright could perform, including jobs as a night cleaner, a cafeteria attendant and a library shelving clerk. (R. at 45-46.) Wells stated that there would be no jobs available to an individual who would have problems with attendance and reliability, including missing two or more days of

---

[2] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2014).

work a month, who required more than regularly scheduled breaks, who needed to leave the job early a couple of times a month and who would be off task up to 25 percent of the workday or workweek. (R. at 46.)

In rendering his decision, the ALJ reviewed records from Louis Perrott, Ph.D., a state agency psychologist; Joseph Leizer, Ph.D., a state agency psychologist; Dr. Bennette E. Norton, M.D.; Dr. Gayle S. Vest, M.D.; Elizabeth A. Jones, M.A., a licensed senior psychological examiner; Diane L. Whitehead, Ph.D., a licensed clinical psychologist; Dr. Nathan Rohini, M.D.; and Holston Medical Group.

On September 17, 2010, Wright was seen by Dr. Nathan Rohini, M.D.,[3] with complaints of depressed mood, weight gain, lack of energy and impaired concentration. (R. at 344-46.) Dr. Rohini reported that Wright was in no acute distress and that she was alert, oriented and had an appropriate affect. (R. at 345.) Physical examination was unremarkable. (R. at 345.) Dr. Rohini diagnosed weight gain, anxiety, symptomatic menopause and depression. (R. at 345.) On October 6, 2010, Wright reported that she returned to work on September 27 and left after only two hours due to a panic attack. (R. at 336.) Wright reported an improvement in her mood and that she was able to manage her moods better. (R. at 336.) Wright also reported that she could not "get in a crowd and work." (R. at 336.) Dr. Rohini reported that Wright was alert, fully oriented, had normal insight and judgment, appropriate affect, fluent and coherent speech and appropriate fund of knowledge. (R. at 337.) On November 16, 2010, Dr. Rohini reported that Wright was alert,

---

[3] Dr. Rohini is a physician with Family Practice - Holston Medical Group, ("HMG"). The record shows that Wright was treated at HMG for symptoms of depression and anxiety since 2001. (R. at 390-427.) During this time, Wright showed improvement with her symptoms while medicated. (R. at 393, 396, 398, 400, 417, 421.)

fully oriented, had normal insight and judgment, depressed mood, appropriate affect, fluent and coherent speech and appropriate fund of knowledge. (R. at 376.) He diagnosed anxiety and depression. (R. at 376.) On December 17, 2010, Dr. Rohini noted that Wright, despite allegations of continued depression, was not taking her prescribed medication. (R. at 374.) On physical examination, Dr. Rohini noted that Wright was in no acute distress, had a normal gait and full range of motion. (R. at 374.) He noted that Wright had a depressed mood and sad affect. (R. at 374.) Wright was fully oriented and had normal judgment and insight. (R. at 374.)

On February 14, 2011, Wright complained of insomnia and back pain with occasional lumbago on the right side. (R. at 493.) She asked Dr. Rohini why he could not prescribe Lortab for her. (R. at 493.) Dr. Rohini reported that Wright's mental status was normal. (R. at 494.) He diagnosed lumbago and depression. (R. at 494.) On May 9, 2011, Wright complained of left hip pain after falling. (R. at 501.) Dr. Rohini reported that Wright's bipolar disorder was well-controlled with medications. (R. at 501.) She had normal gait, muscle strength and tone and no joint swelling or instability. (R. at 502.) Wright had restricted range of motion in her left hip, and straight leg raising tests were negative. (R. at 502.) Her insight and judgment were intact, and she had a normal affect. (R. at 502.) Dr. Rohini diagnosed hip joint pain and bipolar disorder. (R. at 502.)

On December 4, 2010, Louis Perrott, Ph.D., a state agency psychologist, found that Wright suffered from an affective disorder and anxiety-related disorder. (R. at 50-51.) He opined that Wright was mildly restricted in performing her activities of daily living and in maintaining social functioning. (R. at 51.) Perrott opined that Wright had moderate limitations in her ability to maintain

concentration, persistence or pace. (R. at 51.) He found that Wright had not experienced any repeated episodes of decompensation of extended duration. (R. at 51.)

Perrott completed a mental assessment indicating that Wright had no significant limitations in her ability to carry out very short, simple or detailed instructions, to sustain an ordinary routine without special supervision, to work in coordination with or in proximity to others without being distracted by them and to make simple work-related decisions. (R. at 52-53.) He found that Wright had moderate limitations in her ability to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. at 53.)

On December 20, 2010, Wright was seen by Polly Easterling, B.S.W., of Scott County Behavioral Health/Frontier Health, ("Frontier Health"), for complaints of depression. (R. at 358-62.) Easterling noted that Wright was depressed, but alert, oriented, friendly, anxious and stable. (R. at 358.) Easterling diagnosed major depressive disorder, severe without psychotic features; pain disorder with agoraphobia; and assessed Wright's then-current Global Assessment of Functioning, ("GAF"),[4] score at 51,[5] with her highest and lowest GAF scores

---

[4] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

being 51 within the past six months. (R. at 360.) On February 3, 2011, Wright reported that she had been sexually abused by her father. (R. at 481.) She reported suffering from depression for years. (R. at 481.) She denied receiving inpatient treatment. (R. at 481.) She was diagnosed with major depressive disorder and panic disorder with agoraphobia. (R. at 482.) Wright's then-current GAF score was assessed at 60. (R. at 482.) Wright stated that she was interested in participating in individual therapy and asked if it would help her get her disability back. (R. at 482.) On March 1, 2011, Wright reported that she was getting more sleep and that she was feeling better. (R. at 516.) She stated that she was getting out of the house and working in the yard. (R. at 516.) Wright reported that her depression had decreased since the weather was warmer. (R. at 516.)

On April 4, 2011, Wright reported that she was sleeping better, but felt "drained" by the early afternoon. (R. at 515.) She stated that she planned to babysit her granddaughter since her daughter began a new job. (R. at 515.) Raykowitz encouraged Wright to continue to engage in community and recreational activities to help improve her mood. (R. at 515.) On June 22, 2011, Wright reported that she felt "antsy." (R. at 512.) She stated that she had been without her medication for over one week, and she was nervous and having mood swings. (R. at 512.) Raykowitz reported that Wright's thought processes were clear and goal-directed, and she had a depressed mood with congruent affect. (R. at 512.) Wright appeared depressed, but psychiatrically stable. (R. at 512.) Raykowitz reported that Wright's cognitive function was grossly intact, and she had good and fair judgment and insight. (R. at 514.) Raykowitz diagnosed a mood disorder and assessed Wright's then-current GAF score at 60. (R. at 514.)

---

[5] A GAF score of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning...." DSM-IV at 32.

On April 12, 2011, Joseph Leizer, Ph.D., a state agency psychologist, found that that Wright suffered from an affective disorder and anxiety-related disorder. (R. at 72-73.) He opined that Wright was mildly restricted in performing her activities of daily living and was moderately limited in her ability to maintain social functioning and to maintain concentration, persistence or pace. (R. at 73.) Leizer found that Wright had not experienced any repeated episodes of decompensation of extended duration. (R. at 73.)

Leizer completed a mental assessment indicating that Wright had no significant limitations in her ability to remember locations and work-like procedures, to understand, remember and carry out very short and simple instructions, to sustain an ordinary routine without special supervision, to make simple work-related decisions, to ask simple questions or request assistance and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (R. at 74-75.) He found that Wright had moderate limitations in her ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to work in coordination with or in proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors and to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (R. at 74-75.)

On May 24, 2012, Elizabeth A. Jones, M.A., a licensed senior psychological examiner, evaluated Wright at the request of Disability Determination Services. (R. at 520-24.) Jones reported that Wright's affect was moderately blunted with a congruent mood. (R. at 520.) Wright reported no major health problems. (R. at 521.) She reported that she enjoyed reading crime stories. (R. at 521.) Jones reported that Wright had no difficulty with attention or concentration. (R. at 522.) Mild psychomotor agitation was noted, as Wright shifted in her chair on occasion. (R. at 522.) Jones noted no evidence of any disordered thought processes. (R. at 522.) Jones diagnosed a panic disorder without agoraphobia and dysthymic disorder. (R. at 523.) Jones assessed Wright's then-current GAF score at 60, with her highest and lowest GAF scores being 60 within the prior six months. (R. at 524.)

Jones completed a mental assessment indicating that Wright had slight limitations in her ability to understand, remember and carry out simple instructions and to make judgments on simple work-related decisions. (R. at 525-27.) She opined that Wright had a satisfactory ability to understand, remember and carry out complex instructions, to make judgments on complex work-related decisions, to interact appropriately with the public, supervisors and co-workers and to respond appropriately to usual work situations and to changes in a routine work setting. (R. at 525-26.)

### III. Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2014). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981).

This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2014).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2011 & West 2012); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Wright argues that the ALJ erred by failing to properly consider her allegations of pain and her symptoms of depression and anxiety in determining that she was not disabled. (Brief In Support Of Plaintiff's Motion For Summary Judgment, ("Plaintiff's Brief"), at 2-17.) As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at

1456.  In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained her findings and her rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Wright argues that the ALJ erred by failing to consider her allegations of pain. (Plaintiff's Brief at 2-17.) I find that the ALJ considered Wright's allegations of pain in accordance with the regulations. The Fourth Circuit has adopted a two-step process for determining whether a claimant is disabled by pain. First, there must be objective medical evidence of the existence of a medical impairment which could reasonably be expected to produce the actual amount and degree of pain alleged by the claimant. *See Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). Second, the intensity and persistence of the claimant's pain must be evaluated, as well as the extent to which the pain affects the claimant's ability to work. *See Craig*, 76 F.3d at 595. Once the first step is met, the ALJ cannot dismiss the claimant's subjective complaints simply because objective evidence of the pain itself is lacking. *See Craig*, 76 F.3d at 595. This does not mean, however, that the ALJ may not use objective medical evidence in evaluating the intensity and persistence of pain. In *Craig*, the court stated:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers....

76 F.3d at 595.

The ALJ noted that Wright's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Wright's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible…." (R. at 19.) The ALJ noted that Wright testified that she was not taking any medications for pain, depression or anxiety, other than ibuprofen for her knee pain. (R. at 19, 35.) The ALJ also noted that Wright had received little treatment for her symptoms. (R. at 19.) On September 17, 2010, Dr. Rohini reported that Wright was in no acute distress and that she was alert, oriented and had an appropriate affect. (R. at 345.) Physical examination was unremarkable. (R. at 345.) On December 17, 2010, Dr. Rohini noted that Wright was in no acute distress, had a normal gait and full range of motion. (R. at 374.)

On March 15, 2011, Dr. Rohini noted that Wright had gained 28 pounds in the previous three months. (R. at 504.) Wright reported that she had a total gym at home, which she used regularly, and that she had been getting out of the house and working in the yard. (R. at 504, 516.) Wright also reported that she was babysitting her granddaughter since her daughter had started a new job. (R. at 515.) On May 9, 2011, Dr. Rohini reported that Wright had normal gait, muscle strength and tone and no joint swelling or instability. (R. at 502.) Wright had restricted range of motion in her left hip, and straight leg raising tests were negative. (R. at 502.) Dr. Rohini diagnosed hip joint pain and bipolar disorder. (R. at 502.) On May 24, 2012, Wright reported that she had no major health problems. (R. at 521.) The record does not suggest debilitating limitations or an inability to work. Based on this, I find that the ALJ properly considered Wright's complaints of pain.

Wright also argues that the ALJ erred by failing to consider her allegations of depression and anxiety. (Plaintiff's Brief at 2-17.) I find that the ALJ properly

considered Wright's allegations of depression and anxiety and that the record supports his finding that these conditions were not disabling. The record shows that Wright required only conservative and routine treatment and no psychiatric hospitalizations for her psychological symptoms. *See* 20 C.R.F. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v) (2014) (stating that an ALJ should consider the type of treatment a claimant received when evaluating whether a symptom is disabling). Wright argues that the limitations caused by her depression, anxiety and bipolar disorder should have been given great weight in determining her residual functional capacity. (Plaintiff's Brief at 10-16.) The ALJ noted that, after the panic attack that triggered Wright's alleged onset date of disability, she received mental health treatment and her mental state improved significantly. (R. at 19, 376.) Dr. Rohini routinely described Wright as being alert and fully oriented, with normal insight and judgment, appropriate affect, fluent and coherent speech and appropriate fund of knowledge. (R. at 337, 345, 374, 376, 502, 505, 509.) In February 2011, Dr. Rohini opined that Wright's mental status was normal and that her bipolar disorder was well-controlled with medication. (R. at 494.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986).

Treatment notes from Frontier Health also describe Wright as alert and oriented, with clear thought processes, coherent and relevant speech, congruent affect, average fund of information, fair judgment and good insight. (R. at 512-14.) The record indicates that Wright had no inpatient treatment. (R. at 481.) In March 2011, Wright reported that her symptoms of depression had decreased. (R. at 516.) In April 2011, state agency psychologist Leizer opined that Wright was mildly restricted in performing her activities of daily living and moderately limited in her ability to maintain social functioning and to maintain concentration, persistence or

pace. (R. at 73.) Leizer found that Wright had not experienced any repeated episodes of decompensation of extended duration. (R. at 73.)

In May 2012, Jones opined that Wright had no difficulty with attention or concentration. (R. at 522.) Jones completed a mental assessment indicating that Wright had slight limitations in her ability to understand, remember and carry out simple instructions and to make judgments on simple work-related decisions. (R. at 525.) She opined that Wright had a satisfactory ability to understand, remember and carry out complex instructions, to make judgments on complex work-related decisions, to interact appropriately with the public, supervisors and co-workers and to respond appropriately to usual work situations and to changes in a routine work setting. (R. at 525-26.)

Based on the above reasoning, I conclude that substantial evidence exists to support the ALJ's weighing of the evidence in determining Wright's residual functional capacity, and I find that the ALJ properly considered Wright's complaints of pain, depression and anxiety. An appropriate order and judgment will be entered.

DATED: September 4, 2015.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE